UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE JULIAN HINOJOSA MALDONADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-114 |
| | § | |
| NORMA LIMON, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION

Plaintiff Jose Julian Hinojosa Maldonado filed this action under 8 U.S.C. § 1503(a) against the United States of America, the Secretary of State of the United States, and Norma A. Limon, in her capacity as Director of the United States Citizenship and Immigration Services ("USCIS") Harlingen Field Office. Hinojosa, who was born in Mexico to Maria Maldonado, a Mexican citizen, and Herberto Hinojosa, a United States citizen, requests a declaratory judgment recognizing him as a U.S. citizen because he acquired citizenship at birth through his father.

On September 16, 2022, the Court granted Defendant's Motion for Summary Judgment. (Order, Doc. 41)[1] In this Memorandum Opinion, the Court explains why Defendants are entitled to summary judgment as to Plaintiff's claim.

**I.   Summary Judgment Facts**

Plaintiff's father, Herberto Hinojosa, was born on August 11, 1907, in Rancho Viejo, Texas, and he resided there until 1915. (Birth Cert., Doc. 28-3, 2; Hinojosa Sworn Stmt., Doc. 28-5, 1) He then moved to Tamaulipas, Mexico, where he resided until 1924, when he returned to the United States and lived in San Benito, Texas for about one year. (Hinojosa Sworn Stmt., Doc. 28-5, 1–2)

---

[1] The Motion is titled as one urged solely by the United States of America, but it concludes with a prayer by "Defendants" for judgment "in favor of the Defendants and against the Plaintiff." The Court will consider the Motion as one made by all Defendants.

The parties disagree about Hinojosa's physical location and residence from 1925 through 1949.[2] Plaintiff's brother testified that during these years, Hinojosa lived in Texas, but traveled repeatedly between the United States and Mexico. (Arnoldo Dep., Doc. 40, 84–85) Defendants rely on Hinojosa's own sworn testimony in which he stated that he remained in Mexico during these years. (Hinojosa Sworn Stmt., Doc. 28-5, 2)

The parties agree, however, that in 1933, Hinojosa married Julia Rios, in Mexico. Together, they had seven children, not including Plaintiff. (Hinojosa Sworn Stmt., Doc. 28-5, 3)

At some point, Hinojosa met Plaintiff's mother, Maria Maldonado. In 1935, two years after Hinojosa married Rios, he and Maldonado had their first child, Arnoldo. (Arnoldo Dep., Doc. 40, 79; Alvear Dep., Doc. 40, 17)

On January 9, 1951, Maldonado gave birth to Plaintiff in Tamaulipas, Mexico. The parties agree that at the time, Hinojosa remained married to Rios. (Pl. Admission, Doc. 28-8, 1) Eight months later, Hinojosa registered Plaintiff's birth with the Mexican authorities, signing the birth certificate as the father. (Birth Cert., Doc. 28-2)

For the first nine years of Plaintiff's life, he lived in Tamaulipas, Mexico. In 1960, he moved to Brownsville, Texas, and he has resided in Texas since then. (Pl. Dep., Doc. 40, 44–45)

In 1966, Hinojosa purported to marry Maldonado in Cameron County, Texas. (Marriage Cert., Doc. 28-4) At the time, Plaintiff was fifteen years old. The parties agree that before then, Hinojosa had not yet obtained a divorce from Rios. (Pl. Admission, Doc. 28-8, 2) Moreover, Hinojosa testified that when he married Maldonado, she "certainly . . . knew" that he had not divorced Rios. (Hinojosa Sworn Stmt., Doc. 28-5, 4) He proceeded with the marriage because Rios "didn't want to give [him] a divorce." (Hinojosa Sworn Stmt., Doc. 28-5, 3)

---

[2] The Court summarizes the evidence that each party submitted, but "resolve[s] factual controversies in favor of the nonmoving party". *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In April 1971, Plaintiff filed a N-600 Application for a Certificate of Citizenship. About three months later, the United States Citizenship and Immigration Services denied the application. (Letter, Doc. 2-1, 2)

In January 1972, Plaintiff celebrated his 21st birthday. At the time, Hinojosa and Rios remained married. (Letter, Doc. 28-6) The following year, Hinojosa purported to marry Maldonado for a second time in Nueces County, Texas. (Marriage Cert., Doc. 28-7)

In 2014, Plaintiff unsuccessfully requested the reopening of the proceedings for his application for a certificate of citizenship. (Letter, Doc. 2-1, 2–5) And three years later, the United States denied his application for a U.S. passport. (Doc. 2-1, 94–95)

## II.    Standard of Review

"Summary Judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the moving party to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, 485 F.3d at 261. If the moving party makes this showing, the burden shifts to the nonmoving party, which "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325)). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**III.   Analysis**

Plaintiff brings this lawsuit under 8 U.S.C. § 1503, which provides the vehicle for an individual within the United States to challenge the denial of a right or privilege based on the determination of his citizenship. Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014).

"There are two sources of citizenship, and two only: birth and naturalization." *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006) (quoting *Miller v. Albright*, 523 U.S. 420, 423 (1998)). "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." *Thomas v. Lynch*, 796 F.3d 535, 538 (5th Cir. 2015) (quoting *Miller*, 523 U.S. at 424). Such acts of Congress include statutes that extend birthright citizenship to children born abroad when at least one parent is a United States citizen and certain statutory requirements are met. *Id.* "The applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statute in effect at the time of the child's birth." *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013). At times, however, Congress can promulgate an immigration statute with retroactive application. In those instances, courts apply the statutory provisions that the amended laws dictate. *See, e.g.*, *Rios v. Civiletti*, 571 F. Supp. 218 (D.P.R. 1983) (relying on 1952 amendments to apply revised definitions within 8 U.S.C. § 1409 to a person born before the statute's effective date).

In the current matter, the parties do not dispute that Plaintiff was born in Mexico, that his father was a United States citizen, that his mother was a citizen of Mexico, and that his father and mother were not married at the time of Plaintiff's birth. As a result, Plaintiff claims he acquired citizenship at birth based on statutes that apply to children born out of wedlock in a foreign country, to one parent who at the time was a U.S. citizen and one parent who was an alien.

When Plaintiff was born in January 1951, the Nationality Act of 1940, as codified in 8 U.S.C. §§ 501–601 (1946), governed an individual's requirements for U.S. citizenship. In 1952,

however, Congress enacted the Immigration and Nationality Act, as codified in 8 U.S.C. §§ 1101–1503, which in relevant part amended the citizenship requirements for children born outside of the country and out of wedlock.  For this category of children, Section 1401(a)(7) described the requirements for U.S. citizenship.  And Section 1409(b) expressly applied Section 1401(a)(7) to "a child born out of wedlock on or after January 14, 1941, and prior to the effective date of this chapter, [December 24, 1952]".[3]  Plaintiff was born within this date range, which means that the requirements within Section 1409(b) and Section 1401(a)(7) control his claim to U.S. citizenship, even though these provisions were not in effect at the time of his birth.

Section 1401(a) identified the categories of individuals who "shall be nationals and citizens of the United States at birth".  Section 1401(a)(7) concerned persons "born outside . . . of United States . . . of parents one of whom is an alien, and the other a citizen of the United States".  For such an individual, to obtain U.S. citizenship under this statute, he must demonstrate that prior to his birth, his parent who is a United States citizen "was physically present in the United States . . . for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years".  8 U.S.C. § 1401(a)(7).[4]

The person seeking citizenship must also establish that he is the child of the person who is a United States citizen.  Section 1409(b) required that "the paternity of such child is established before or after [December 24, 1952] and while such child is under the age of twenty-one years by legitimation."

In light of the applicable statutes in the present matter, to survive summary judgment, Plaintiff must show that a genuine issue of material fact exists as to both the physical presence and the legitimation requirement.  The Court addresses each issue in turn.

---

[3] The statute establishes the effective date of this chapter as the "one hundred eightieth day immediately following the date of its enactment. [June 27, 1952]."  8 U.S.C. § 1101 (1952).
[4] The statute also required that the child must come to the United States before the age of twenty-three and meet certain requirements for physical presence in the country.  See 8 U.S.C. § 1401(b).  The parties in the current lawsuit do not dispute that Plaintiff satisfies this provision of the statute.

### A. Physical Presence Requirement

Plaintiff must ultimately demonstrate that his father "was physically present in the United States . . . for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years". 8 U.S.C. § 1401(a)(7) (1952). The physical presence requirement can be met through the cumulation of non-continuous periods of time within the United States. *See id.* ("period or periods"); *see also United States v. Garza-Flores*, No.2:20-CR-00953, 2021 WL 5771866, at *6 (S.D. Tex. Dec. 5, 2021)("An individual does not need to be physically present in the United States *continuously*.").

In the present matter, the summary judgment record establishes that Plaintiff's father resided in the United States for about eight years before the age of fourteen, as he was born in Texas in 1907 and lived there until 1915. (Hinojosa Sworn Statement, Doc. 28-5, 1–2) The parties do not dispute that based on this evidence, Plaintiff can establish that his father was in the United States for at least five years before the age of fourteen.

In August 1921, Plaintiff's father turned fourteen. As a result, for Plaintiff to create a fact issue as to the physical presence requirement, he must provide competent summary judgment evidence demonstrating that his father was physically present in the United States for at least five years between August 1921 and Plaintiff's birth in January 1951.

In their Motion, Defendants rely principally on the sworn testimony of Plaintiff's father, who testified under oath that he resided in Texas for about one year in 1924, and then returned to Mexico, where he remained until 1949. (Hinojosa Sworn Stmt., Doc. 28-5, 2) He lived in Texas for at least some time between 1949 and Plaintiff's birth. (*Id.* at 1–2) Based on this testimony, Plaintiff's father was physically present in the United States for at most three years between 1924 and 1951.

In response, Plaintiff highlights the deposition testimony of his brother, Arnoldo Hinojosa.[5] Arnoldo testified that although their father would "come and go" between the United States and Mexico, their father lived on a ranch in Texas for about eight years between 1935 and 1943. (Arnoldo Dep., Doc. 40, 84) In addition, Arnoldo recalled that he lived with his father in Brownsville, Texas for "about six or seven years" between 1943 and 1950. (Arnoldo Dep., Doc. 40, 84–85) Accepting this evidence in the light most favorable to Plaintiff, Arnoldo's testimony directly controverts the testimony of Plaintiff's father. If Arnoldo's recollection is true, Plaintiff's father was physically present in the United States for about fourteen or fifteen years after the age of fourteen and before the birth of Plaintiff. Although Arnoldo testified that his father traveled back and forth between Mexico and Texas over these years, viewing the evidence in the light most favorable to Plaintiff leads to the reasonable conclusion that over the course of fourteen or fifteen years, Plaintiff's father was physically present in the United States for at least one-third of that time period, which would meet the five years of physical presence that Plaintiff requires to satisfy Section 1401(a)(7)'s requirements.

Given the competing evidence regarding the physical location of Plaintiff's father during the relevant time period, Plaintiff has successfully demonstrated that a fact issue exists as to this issue.

**B. Legitimation**

Plaintiff does not dispute that he was born to a father who was a United States citizen and to a mother who was an alien, at a time when they were not married. As a result, Plaintiff must demonstrate that paternity was established by legitimation before Plaintiff turned twenty-one.

---

[5] In response to the Motion, Plaintiff relies on depositions and pleadings from other proceedings, including a lawsuit under 8 U.S.C. § 1503 that his brother, Arnoldo Hinojosa, pursued in the Southern District of Texas–McAllen Division (Case No. B-0014-CV-0039), and the proceedings concerning an application for a certificate of citizenship by another one of his brothers, Tirso Hinojosa. The United States objects to these documents on the grounds that they stem from unrelated cases and bear no information pertinent to the issues in the current lawsuit. (Reply & Objs., Doc. 33) The Court overrules the objections. While most of the documents are minimally relevant, they do contain general context regarding Plaintiff's family history. And the Deposition of Arnoldo Hinojosa (Doc. 40, 76–87) provides direct testimony regarding the physical location of Plaintiff's father during relevant time periods. In addition, as the United States of America was a defendant in the lawsuit in which the depositions occurred, the Court accepts it as evidence in this case.

*See Gonzalez-Segura v. Sessions*, 882 F.3d 127 (5th Cir. 2018) (affirming summary judgment against Gonzalez-Seguro because he could not show that legitimation occurred before he turned twenty-one).

Legitimation is the "act of putting a child born out of wedlock in the same legal position as a child born in wedlock." *Iracheta v. Holder*, 730 F.3d 419, 425 (5th Cir. 2013) (quoting *In re Cabrera*, 21 I.&N. Dec. 589, 591 (BIA 1996)). The applicable version of Section 1409 required that paternity by legitimation occur before the child turned twenty-one. *See* 8 U.S.C. 1409(b)(1952). As to the acceptable routes for legitimation, the statutes contained some uncertainty. In 1951, the applicable statute required that legitimation occur "under the law of the child's residence or domicile". 8 U.S.C. § 501(h) (1946). The 1952 amendments to the immigration statutes, however, broadened the relevant definition for "child", to allow for legitimation "under the law of the child's residence or domicile, *or* under the law of the father's residence or domicile, whether in the United States or elsewhere." 8 U.S.C. 1101(c)(1)(1952)(emphasis added). While the 1952 statute expressly applied the relevant requirements for citizenship retroactively—i.e., the requirements within Section 1401(a)(7)—the statute did not do so for the applicable definitions, which are contained within a separate subchapter. As a result, the Court will apply the relevant definition for "child" contained within the statute in effect in 1951.

In 1966, Plaintiff resided in Texas, which means that this state's law controls as to Plaintiff's legitimation.[6] In this year, Texas law established that "[w]here a man, having by a woman a child or children shall afterwards intermarry with such woman, such child or children shall thereby be legitimated . . . ." TEX. PROB. CODE ANN. § 42 (West 1956). The statute's protections also applied to children of "marriages deemed null". *Id.* At the time, Texas law did not recognize the validity of a marriage in which one of the participants already was married. *See Defferari v. Terry*, 99 S.W.2d 290, 291 (Tex. 1936) (explaining that "an impediment existed to

---

[6] The summary judgment record also indicates that in 1966, Plaintiff's father also resided in Texas. As a result, even under the broader provision of 8 U.S.C. § 1101(c)(1) (1952), Texas law would govern.

the consummation of a valid marriage" due to one of the participant's prior undissolved marriage); *see also Lewis v. Ames*, 44 Tex. 319, 340 (1846) (stating that the Texas Legislature criminalized polygamy in 1836). In other words, a bigamous marriage could not represent a lawful marriage that would satisfy the legitimation requirement of Section 42. *See Defferari*, 99 S.W.2d at 290–91.

As for marriages deemed null, Texas law recognized that legitimation of a child occurred through a purported marriage, "so intended by the parties, deficient only by the existence of some legal impediment or the want of compliance with the forms of law in contracting it." *Lewis*, 44 Tex. at 341. But importantly, such a marriage required "good faith in one or both parties", necessitating that the parties to the marriage maintained "ignorance of some existing impediment." *Papoutsis v. Trevino*, 167 S.W.2d 777, 779 (Tex. Civ. App.—San Antonio 1942, writ dism'd); *see also Esparza v. Esparza*, 382 S.W.2d 162, 167 (Tex. Civ. App.—Corpus Christi 1964, no writ). If both parties to the marriage knew of the legal impediment, the purported marriage was neither valid nor a "marriage deemed null." *See, e.g.*, *Esparza*, 382 S.W.2d at 167; *cf. Cameron v. Cameron*, 103 S.W.2d 464 (Tex. Civ. App.—Galveston 1937, writ ref'd). Such a purported marriage could not establish paternity by legitimation under Section 1409(b).

In the present matter, the parties do not contest that when Plaintiff's father and mother purported to marry in 1966, Plaintiff's father remained married under Mexican law to Julia Rios, his first wife. In addition, the uncontroverted summary judgment evidence also demonstrates that in 1966, both of Plaintiff's parents knew that his father remained married in Mexico. For example, in 1971, Plaintiff's father conceded to the INS that he had yet to divorce Rios. (Hinojosa Sworn Stmt., Doc. 28-5, 3) In fact, when asked why he married Plaintiff's mother in 1966 if he had not yet divorced Rios, Plaintiff's father responded, "Well she [Rios] didn't want to give me a divorce, so I just came over here and married this one [Plaintiff's mother] over here." (*Id.*) In addition, Plaintiff's father also testified about whether Plaintiff's mother knew, in 1966, that

Plaintiff's father remained married to Rios: "Certainly she knew—I had told her all of that." (*Id.* at 4)

Plaintiff offers no competent summary judgment evidence to controvert his father's statements, which confirm that both of Plaintiff's parents knew in 1966 that they were attempting to enter into a bigamous marriage. Under the laws of Texas at the time, their attempt to marry was invalid, and also did not constitute a marriage deemed null for purposes of legitimation under Section 42 of the Texas Probate Code.

In his Response, Plaintiff references the laws of Tamaulipas, Mexico in connection with the issue of legitimation, appearing to argue that under Mexican law, the purported marriage between Plaintiff's parents in 1966, albeit bigamous, nevertheless accomplished Plaintiff's legitimation. (*See* Response, Doc. 32, 3) As previously explained, however, in 1966, both Plaintiff and his father resided in Texas, precluding the application of Mexican law to the purported marriage that Plaintiff argues effectuated legitimation. In addition, a plaintiff relying on foreign law bears the burden of providing the court with the applicable foreign law. *See Rosales v. Lynch*, 821 F.3d 625, 629 (5th Cir. 2016); *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546 (5th Cir. 2012). At most, Plaintiff cites to the Civil Code of Tamaulipas "in effect in 1976", with no indication that this law governed ten years earlier, when Plaintiff's parents purported to marry. (Response, Doc. 32, 3) As a result, even if the Court considered Mexican law, the summary judgment record contains no information about the applicable Mexican law for the relevant time period.

Based on the summary judgment record and the applicable law, the Court concludes that no evidence demonstrates that the paternity of Plaintiff was established by legitimation before he turned twenty-one years of age. As a result, he cannot satisfy the requirements of 8 U.S.C. § 1401, *et seq.*, for U.S. citizenship for a child born outside of marriage in a foreign country, to a father who was a United States citizen and a mother who was an alien.

## IV.     Conclusion

Although Plaintiff has shown there is an issue of material fact as to the applicable physical presence requirement, he fails to do so as to the legitimation requirement. For the reasons in this Memorandum Opinion, Defendants are entitled to summary judgment.

Signed on October 3, 2022.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge